# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 28, 2011 Session

## ESTATE OF SUE BRATTON THOMPSON

**Direct Appeal from the Chancery Court for Maury County**
**No. P646-08       Jim T. Hamilton, Chancellor**

---

**No. M2011-00411-COA-R3-CV - Filed March 14, 2012**

---

This appeal involves an attorney fee award. The appellee attorney was hired to represent the executor of an estate. After handling the estate, the attorney submitted a fee request to the trial court. The beneficiary of the estate objected, but the trial court awarded the fee amount requested. The beneficiary appeals, arguing that the attorney fee request was so excessive that it should be disallowed entirely under *White v. McBride*, 937 S.W.2d 796 (Tenn. 1996). In the alternative, if the fee request is not disallowed in its entirety, the beneficiary contends that the trial court erroneously relied on a percentage formula in the local rule, and that the fee should be reduced because the attorney sought fees for work that was either delegated to others or which did not benefit the estate. We hold that the amount of the attorney's fee request and fee award is excessive. While the case presents a close question as to whether any fee should be allowed, we conclude that the lawyer should not be precluded from receiving any fee, and so modify the fee award to a reasonable amount.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court**
**Modified and Remanded**

HOLLY M. KIRBY, J., delivered the Opinion of the Court. ALAN E. HIGHERS, P. J., W.S., and J. STEVEN STAFFORD, J., each filed a Separate Concurrence.

John D. Kitch, Nashville, Tennessee; David J. Callahan, III, Nashville, Tennessee, for the Respondent/Appellant, Catherine Dockery

Petitioner/Appellee Jerry Colley, Columbia, Tennessee, *pro se*

# OPINION

## FACTS AND PROCEEDINGS BELOW

In April 2006, Sue Bratton Thompson ("Decedent") executed a will. She executed codicils in July 2006 and April 2008. The primary beneficiary of the will and the codicils was the Decedent's daughter, Respondent/Appellant Catharine Thompson Dockery ("Ms. Dockery"). The will named First Farmers and Merchants Bank of Columbia, Tennessee (the "Bank") as the Executor of the Decedent's estate. The Decedent died on October 24, 2008.

Thereafter, Columbia, Tennessee attorney Jerry C. Colley ("Mr. Colley") was hired to represent the Executor and probate the will and the codicils. Mr. Colley's contract of engagement is not included in the appellate record. In November 2008, Mr. Colley filed a petition on behalf of the Bank in the Chancery Court of Maury County, Tennessee, to probate the will and the codicils. An order probating the will and the codicils was subsequently entered. After that, Mr. Colley was responsible for making sure that a proper tax return was filed, and effectuating the transmittal of the Estate assets, primarily to Ms. Dockery. To assist with the tax return, Mr. Colley hired C. Anthony Edwards ("Mr. Edwards"), a tax lawyer, to prepare the estate tax return. The Decedent owned a substantial amount of Bank stock, so Mr. Colley retained a firm to value the stock for the estate tax return.

After this work was completed, Mr. Colley filed a motion in the trial court to set a reasonable attorney fee for his legal services to the Estate. In support, he submitted his own affidavit, which states:

> My hourly rate was $250.00 per hour during this period of time. This Estate has an approximate value of $3,000,000.00 (Three Million Dollars) most of which value consist[s] of 65,912 shares of First Farmers and Merchants Bank common stock. Due to this situation I retained C. Anthony Edwards, attorney at law, who is acknowledged as an expert in the field of estate taxation. . . .
>
> Because of the fact that the Estate owns such a large block of First Farmers & Merchants Bank stock we retained the firm of Lattimore, Black, Morgan and Cane who are experts in valuing stock not traded on the public stock exchanges. That firm was able to place a value per share on this amount of stock which value is almost 50% (fift[y] percent) less than the price common stock of this bank was trading for at the time of death of Sue Bratton Thompson. The value placed on this stock was accepted both by [the] Tennessee Department of Revenue and the Internal Revenue Service for estate tax purposes. This resulted in a savings of approximately $500,000.00 (Five Hundred Thousand Dollars) in estate taxes both state and federal.

In August and September 2009, I negotiated the sale of the Sue Thompson home at 203 Woods Circle, Columbia, Tennessee with the eventual buyer, Tom Massey and Wife Nora Massey. This was for a sale[s] price of $200,000.00 (Two Hundred Thousand Dollars) and was done without retaining a real estate firm.

I shall be called upon to render further service in connection with the administration of the Estate[.]

Mr. Colley also filed a document entitled "Hours Expended," listing the time he spent on the Estate. In it, Mr. Colley stated that he had expended forty-eight hours in service to the Estate. Neither Mr. Colley's motion, nor the attached documents, sought a certain fee amount.

In response, Ms. Dockery filed an objection to Mr. Colley's fee request. In her response, Ms. Dockery asserted that many of Mr. Colley's time entries were not appropriate and did not benefit the Estate, especially his time entries for tax preparation, administrative work at the Decedent's house, and preparation of Mr. Colley's own fee request. Ms. Dockery said that it had "come to [her] attention" that Mr. Colley believed that he was entitled to a fee in the amount of $50,000, and she objected to the amount of the fee. She argued that the fee request was so excessive that Mr. Colley should be awarded no fee at all. If he were awarded a fee, Ms. Dockery contended that it should be based on only twenty-seven hours of time spent on work for the Estate, rather than the forty-eight hours Mr. Colley claimed.

On November 23, 2010, the trial court entered an order awarding Mr. Colley the $50,000 fee he requested, with $10,784.50 of the total $50,000 fee to be paid to the tax attorney, Mr. Edwards. Echoing Mr. Colley's affidavit, the trial court's order stated:

This Estate had an approximate value of Three Million Dollars, most of which value consists of 65,912 shares of First Farmers and Merchants Bank common stock. Due to this situation, Mr. Colley retained C. Anthony Edwards, Attorney at Law in Columbia, Tennessee. Mr. Edwards is recognized as an expert in the field of estate taxation.

Since the Estate owns such a large block of First Farmers and Merchants Bank stock, Mr. Coll[e]y hired the firm of Lattimore, Black, Morgan and Cane who are experts in valuing stock not traded on the public stock exchanges. This law firm with the assistance of Mr. Edwards was able to place a value per share on this amount of stock which value is almost fifty percent less than the price common stock of this bank was trading for at the time of the death of Sue Bratton Thompson. The value placed on this stock was accepted both by [the] Tennessee Department of Revenue and the Internal

Revenue Service for Estate Tax purposes. This work done by these firms resulted in a savings of approximately half a million dollars in estate taxes both state and federal.

. . . .

Mr. Colley also negotiated the sale of Sue Thompson's home at 203 Woods Circle, Columbia, TN with the eventual buyer[s], Tom Massey and his wife, Nora Massey. This was for a sales price of Two Hundred Thousand Dollars and was done without retaining a real estate firm, thus saving a realtor's fee of some six percent.

Hon. Jerry Colley now requests approval of a reasonable fee for service[s] rendered. This fee will be determined by the guidelines set forth in Local Rules for this Judicial District 33.03, 33.04 and 33.05. Rule 33.04–Fees for Personal Representatives. This rule suggest[s] that the Judge be guided, but not bound by a formula allowing not less than one percent nor more than five percent of the gross probate estate for which the personal representative was responsible. Mr. Colley has requested a fee of Fifty Thousand Dollars from which he must pay $10,784.50 in fees to Mr. C. Anthony Edwards leaving Mr. Colley a fee of [$39,215.50]. This represents a fee of between on[e and one] and one-half percent of the gross estate and is well within the formula suggested by Rule 33.04 of the Local Rules.

After that, Ms. Dockery filed a motion to alter or amend the judgment. The motion argued that the trial court erred in basing the fee calculation on the value of the gross *taxable* estate — approximately $3 million — rather than the gross *probate* estate — approximately $622,000 — in the percentage formula in the Local Rule. The motion noted that substantial assets of the Decedent, including the Bank stock and a home that belonged to the Decedent, passed outside of the probate estate.[1]

The Bank, as executor of the Estate, filed a response to Ms. Dockery's motion to alter or amend.[2] The Bank acknowledged that Ms. Dockery was correct in differentiating between the $3 million gross taxable estate and the approximately $622,000 gross probate estate under the percentage formula in the Local Rule. In particular, the Bank noted that the Decedent's stock passed outside of the probate Estate and was not part of the Estate. In light of this, the Bank suggested that the trial court "re-visit" the attorney fee award.

---

[1] The Decedent apparently owned two homes. A home on Woods Circle was part of the Estate, and the second home on Hampton Pike passed outside of the Estate.

[2] The Bank is not a party to this appeal.

In his response to Ms. Dockery's motion to alter or amend, Mr. Colley maintained that the fee award was justified. He cited to the Local Rules, and asked the trial court to consider "the time, experience, skills, difficulty in dealing with beneficiaries of the Estate and the value of the Gross Probate Estate." The response did not elaborate on the alleged difficulties with the Estate beneficiary or state the dollar value of the gross probate estate. Mr. Colley relied on the "extraordinary services" he rendered to the Estate, namely, obtaining an advantageous valuation of the Bank stock for tax purposes, and selling the Decedent's home without retaining a real estate agent. Based on this, Mr. Colley asserted that the $50,000 fee awarded to him by the trial court was "reasonable and appropriate."

On January 25, 2011, the trial court denied Ms. Dockery's motion to alter or amend. Similar to Mr. Colley's response to the motion to alter or amend, the order stated: "the Court finds that Jerry C. Colley rendered extraordinary services including [the] sale of the decedent's home, services concerning the value of the []65,912 shares of First Farmers and Merchants Bank common stock for inheritance and estate tax purposes and assistance in preparing complex tax returns."[3] Ms. Dockery now appeals.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Ms. Dockery contends that the fee requested by Mr. Colley, and awarded by the trial court, was "clearly excessive," so Mr. Colley should receive no fee at all, under *White v. McBride*, 937 S.W.2d 796 (Tenn. 1996). In the alternative, if Mr. Colley is allowed a reasonable fee, Ms. Dockery contends that the trial court erred in basing its award solely on the percentage formula in the trial court's Local Rule, and in doing so, by calculating the award based on the gross *taxable* estate rather than the gross *probate* estate. If Mr. Colley is not precluded under *White v. McBride* from receiving any fee at all, Ms. Dockery asks this Court to set a reasonable fee.

Our Supreme Court recently summarized the standard of review applicable to a trial court's decision regarding a reasonable attorney fee as follows:

> [A] determination of attorney's fees is within the discretion of the trial court and will be upheld unless the trial court abuses its discretion. We presume that the trial court's discretionary decision is correct, and we consider the evidence in the light most favorable to the decision. The abuse of discretion standard does not allow the appellate court to substitute its judgment for that of the trial court, and we will find an abuse of discretion only if the court "applied

---

[3]The trial court also noted that the $10,784.50 fee to the tax attorney, Mr. Edwards, was to be paid from the overall $50,000 award to Mr. Colley.

incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employ[ed] reasoning that causes an injustice to the complaining party."

*Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011) (internal citations omitted). "An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

## ANALYSIS

We consider first whether Mr. Colley's fee request is excessive, and then address whether it is so "clearly excessive" that he should be precluded from receiving any fee at all under *White v. McBride*.

## Excessive Fee

Ms. Dockery argues that Mr. Colley's fee award is excessive for numerous reasons. First, she contends that the fee award was based on a percentage formula in the trial court's Local Rule that is contrary to the law on setting a reasonable attorney fee. Second, she argues that the dollar value of the estate on which the trial court based its award was incorrect. Third, Ms. Dockery asserts that the "extraordinary services" on which Mr. Colley relies do not support the fee awarded to him. Fourth, Ms. Dockery contends that some of the time entries claimed by Mr. Colley did not relate to the estate and/or did not benefit the estate. We address each of these arguments in turn.

Because the fee of $10,784.50 to the tax attorney, Mr. Edwards, was expected to come out of Mr. Colley's fee and Mr. Edwards' fee is not disputed on appeal, for purposes of our analysis, we consider the fee awarded by the trial court to Mr. Colley to be $39,215.50, or $50,000 minus Mr. Edwards' fee.

### Percentage Formula in Local Rule

Ms. Dockery argues that there is no basis in the record for a fee award to Mr. Colley of $39,215.50. Even taking at face value the 48 hours Mr. Colley claims he spent on behalf of the Estate, which Ms. Dockery disputes, multiplied by his claimed hourly rate of $250 per hour, that amounts to a fee of approximately $12,000. Therefore, Ms. Dockery maintains, it is apparent that the trial court must have relied solely on the percentage formula contained in its Local Rule to arrive at a fee award of over $39,000.

In the alternative, if reliance on the percentage formula in the Local Rule is permissible, Ms. Dockery argues that Mr. Colley gave the trial court the wrong figure on which to base the percentage calculation. Local Rule 33.04 references a percentage of the "gross probate estate," which in this case is $622,633, because substantial assets of the Decedent passed outside of the probate estate. In his initial fee request, Mr. Colley simply stated to the trial court that the "Estate has an approximate *value* of $3,000,000.00 (Three Million Dollars)," which is the approximate dollar value of the gross *taxable* estate,[4] not the gross probate estate.

In response, Mr. Colley acknowledges that the gross probate estate is $622,633.00, and that the figure of "approximately" $3 million is in fact the gross taxable estate.[5] He argues that the trial court did not rely exclusively on the Local Rule's percentage formula, but also relied on the "extraordinary services" he rendered and the hours he worked. He does not substantively address Ms. Dockery's argument that use of such a percentage formula is inappropriate.

Rules 33.04 and 33.05 (the "Local Rules") of the Local Rules of Practice of the 22nd Judicial District, applicable to Maury County, provide as follows:

> **33.04. Fees for Personal Representatives.** In setting or approving fees to personal representatives, the Clerk and Master or the court will consider the personal representative's time, experiences, skills, difficulty in dealing with creditors and beneficiaries of the estate, and the value of the gross probate estate for which the personal representative was responsible. The Court may consider any extraordinary services, including sales of real or personal property, litigation involving claims against the estate or other matters, complex tax returns or audits, the management of the decedent's business, will contests, or such other special services that may have been necessary. The Clerk and Master and the Court will be guided, but not bound, by a formula allowing not less than 1% nor more than 5% of the gross probate estate for which the personal representative was responsible. Time expended and the nature of the estate will be given greater consideration than the monetary value of the estate.

---

[4]The gross taxable estate was $2,877,238.

[5]While Mr. Colley's brief in this appeal concedes that the gross probate estate is not $3 million but is instead $622,633, his pleadings before the trial court do not include this distinction.

**33.05. Fees for Attorneys.** In setting and approving fees to attorneys, the Court will consider the factors and the guideline formula set forth in the preceding paragraph 33.04, and the factors set forth in Rule 8 of the Supreme Court of Tennessee.

In its original fee award, the trial court stated: "This Estate had an approximate value of Three Million Dollars," and explained that this value consisted primarily of the stock. The trial court stated that "Mr. Colley has requested a fee of Fifty Thousand Dollars" minus the $10,784.50 payment to the tax attorney, leaving Mr. Colley a fee of $39,215.50. It explained that the $50,000 award "represents a fee of between on[e] and [one] and one-half percent of the gross estate and is well within the formula suggested by Rule 33.04 of the Local Rules." Thus, as argued by Ms. Dockery, it is apparent that the trial court's award was driven in large part by the percentage formula set forth in the Local Rule.

The Rules of Professional Conduct (RPC) contained in Rule 8 of the Rules of the Tennessee Supreme Court address attorney fees. RPC 1.5 lists numerous factors to be considered in determining the reasonableness of an attorney fee. Tenn. Sup. Ct. R. 8, RPC 1.5. The Court in ***Wright*** expressly rejected the use of percentage formulas, especially percentage caps to set an award of attorney fees. ***Wright***, 337 S.W.3d at 182. The Court explained that "specify[ing] a percentage of what an attorney could recover in a case involving a minor . . . would depart from our existing law that 'ultimately the reasonableness of the fee must depend on the particular circumstances of the individual case.' " ***Id.*** at 182 (quoting ***White***, 937 S.W.2d at 800). It cautioned: "Prescribing a fee structure would tend to result in similar fees being awarded in cases with different factual and procedural histories." ***Wright***, 332 S.W.3d at 182. The Court rejected a formulaic approach based on any one of the listed factors, noting that "no single factor found within RPC 1.5 merits special emphasis over the other factors in determining a reasonable fee[,] . . . . [although] the trial court may conclude that certain factors merit greater weight under the unique circumstances of a particular case." ***Id.*** at 186.

Local Rule 33.04 characterizes the percentage formula as a "guide" to the court in setting an attorney fee, and notes that the court is not bound by them.[6] Moreover, the "amount involved" is expressly listed in RPC 1.5 as a factor to be considered in setting an attorney fee. ***See*** Tenn. Sup. Ct. R. 8, RPC 1.5(a)(4) (2011). Nonetheless, we find that the inclusion of such a formula in the Local Rule is antithetical to RPC 1.5 and ***Wright*** in that it invites the

---

[6]For many years, awarding fees based on a percentage of the assets was common in probate matters. ***See In re Estate of Weisberger***, 224 S.W.3d 154, 160, 164 n.5 (Tenn. Ct. App. 2006) (the trial judge remarked, "for many years . . . fees in probate were a percentage of the assets. Then the Courts told us that's not the way to do it.").

trial court to use a "rule of thumb" instead of the individualized weighing process mandated by the Supreme Court. Local rules adopted by trial courts may not conflict with the rules adopted by the Supreme Court or other substantive law. *See Hessmer v. Hessmer*, 138 S.W.3d 901, 905, n.4 (Tenn. Ct. App. 2003) (citing Tenn. Code Ann. § 16-2-511 (2009)).

Here, the trial court explicitly relied on the percentage formula set forth in Local Rule 33.04.[7] In doing so, the trial court "stray[ed] beyond the applicable legal standards." *See Lee Med.*, 312 S.W.3d at 524.

### *Extraordinary Services*

Mr. Colley argues on appeal that the trial court did not rely exclusively on the percentage formula in Local Rule 33.04, but also considered "extraordinary services" that he rendered on behalf of the Estate, pursuant to the provision in Local Rule 33.04 stating that the trial court "may consider any extraordinary services" rendered, and listing examples of such. Ms. Dockery insists that the trial court relied exclusively on the percentage formula.

In its original fee award, the trial court recites some of what Mr. Colley describes as "extraordinary services," but its explanation of how it arrived at the fee amount appears to be based on the amount Mr. Colley requested and the percentage formula. However, in its later order denying Ms. Dockery's motion to alter or amend, the trial court explained its denial of the motion as follows:

> The Court finds that Jerry C. Colley rendered extraordinary services including sale of the decedent's home, services concerning the value of the []65,912 shares of First Farmer and Merchants Bank common stock for inheritance and estate tax purposes and assistance in preparing complex tax returns.

Therefore, we agree with Mr. Colley that the trial court's ultimate decision approving his fee request was in part based on consideration of the "extraordinary services" Mr. Colley claims.

The term "extraordinary services" is not used in RPC 1.5. The Local Rule lists examples of such extraordinary services, such as "sales of real or personal property, litigation . . . against

---

[7]In applying the percentage formula in the Local Rule, as noted by Ms. Dockery, the trial court explicitly relied on the value of the gross taxable estate instead of the gross probate estate referenced in local Rule 33.04. Because we find that relying on any such formula was error, we do not address this issue raised by Ms. Dockery at this juncture. However, we find the statement of the applicable dollar value of the estate in Mr. Colley's fee request to the trial court to be significant to our analysis under *White v. McBride*, as addressed later in this Opinion.

the estate . . . , complex tax returns or audits, . . . or other such special services that may have been necessary." *See* Local Rule 33.04. The Supreme Court's recent amendment to RPC 1.5 adds a comment clarifying that the factors listed "are not exclusive." *Wright*, 337 S.W.3d at 177 n.17. We find nothing about the "extraordinary services" language in the Local Rule to be contrary to the attorney fee analysis prescribed by the Supreme Court.

In light of this, we examine the "extraordinary services" claimed by Mr. Colley in this case, to see if they justify the fee amount awarded to him. In the trial court, and in his appellate brief, the "extraordinary services" Mr. Colley lists are:

> 1.) Retaining of the firm of Lattimore, Black, Morgan & Cain, PC, to determine the value of a large block of First Farmers and Merchants Bank stock which consisted of 65,912 shares of this common stock. With the help of Mr. Lattimore, Mr. Colley, with the aid of Mr. Anthony Edwards, was able to submit to the IRS and Tennessee Department of Revenue a per share value which saved the Estate and Ms. Dockery approximately $500,000.00. 2.) Mr. Colley negotiated the sale of the home at 203 Woods Circle, Columbia, Tennessee, to the eventual buyer without the need of a real estate firm, thus saving a Realtor's fee of sum [sic] six (6) percent. 3) Mr. Colley assisted Mr. Anthony Edwards, considered an expert in the estate tax field, in preparing the IRS Estate Tax Return and the Tennessee Department of Revenue Inheritance Tax Return which, because of the size of the taxable estate, were more complex returns.

As to the Bank stock, Ms. Dockery contends that it passed directly to Ms. Dockery upon the Decedent's death, and thus was never part of the probate estate. The Bank's response to Ms. Dockery's motion to alter or amend confirms: "The Bank stock was a 'transfer on death' asset and therefore passed directly to Ms. Dockery as a non-probate asset." Mr. Colley does not dispute this. Moreover, Mr. Colley hired specialists to value the stock for tax purposes; he did not value it himself. The compensation for the firm that valued the stock is not at issue. Mr. Colley's decision to hire specialists to value the stock was appropriate under the circumstances, but does not appear to be extraordinary.

Mr. Colley notes that he negotiated the sale of a home belonging to the Decedent, "thus saving [the Estate] a Realtor's fee of s[ome] six (6) percent."[8] We find that the house sale is an appropriate factor to be considered in the overall fee, though it does not rise to the level of "extraordinary" under the circumstances in this case.

---

[8]Mr. Colley explained at oral argument in this appeal that he knew of someone who was interested in purchasing the home, so he decided to handle the sale instead of listing the home for sale with a realtor.

Finally, Mr. Colley emphasizes that "because of the size of the taxable estate, [the Estate tax return was] complex . . . ." Again, because the tax issues were not within Mr. Colley's area of expertise, he hired a specialist, Mr. Edwards, to prepare the Estate tax return. The separate fee of the tax lawyer, approximately $10,000, is not challenged on appeal. The hiring of a tax specialist was appropriate, but straightforward and not extraordinary. Mr. Colley does not explain why he should be compensated for the work delegated to the tax lawyer.

From our overall review of the record, the estate, with a single beneficiary, appears relatively straightforward. The only potentially complex parts were appropriately doled out to specialists, who were paid separately. It is appropriate to consider Mr. Colley's sale of the Woods Circle home, but only to the extent that his handling the house sale would effect a savings or other benefit to the Estate; paying Mr. Colley a premium attorney fee for doing the work of a realtor would be inappropriate.

Thus, we find that, in general, it is appropriate for a trial court to consider "extraordinary services" performed by an attorney, pursuant to Local Rule 33.04. However, the services cited by Mr. Colley cannot fairly be described as "extraordinary" and do not provide support for awarding him an enhanced attorney fee.

### *Hours Worked*

On appeal, Ms. Dockery argues that the hours Mr. Colley claims to have worked on Estate business were either on matters that did not benefit the Estate, or were for administrative work rather than lawyer work, or were duplicative of the time spent by the specialists hired for the Estate.

Mr. Colley did not address this argument in his pleadings filed in the trial court. Likewise, he did not address it in his brief filed in this appeal.

Mr. Colley filed a document with the trial court entitled "Hours Expended by Jerry C. Colley, Attorney." The document, filed in support of his fee request, lists the hours that Mr. Colley claims he worked on behalf of the Estate. Our review is based on that document, the other documents supporting the fee request, and the record as a whole.

Ms. Dockery first disputes the 6.0 hours Mr. Colley claims to have worked on tax issues for the Estate, when in fact Mr. Colley hired a tax attorney, Mr. Edwards, to handle the estate tax matters. Mr. Colley's time records include entries for "work on TN inheritance tax," "conference with C. Anthony Edwards," "preparing tax return," and other similar entries.

-11-

Mr. Colley does not explain why such substantial time was required of him on matters that he hired Mr. Edwards to handle.[9]

Ms. Dockery also disputes 5.0 hours that Mr. Colley lists for "work at house" or "Terminix man at house/inspection" and the like, arguing that Mr. Colley seeks a lawyer's compensation for clearly non-lawyer work. Most of the time entries do not indicate whether Mr. Colley's time was at the Woods Circle house that was part of the Estate or at the Hampton Pike house that was not part of the Estate, and there is no explanation for why the Estate should be charged a lawyer's rate for time described as "work at house."

Mr. Dockery points out that nearly all of the time entries in Mr. Colley's "Hours Expended" document lack any detail that would inform either the trial court or this Court how the time spent benefitted the Estate. For example, Mr. Colley's last time entry lists "10.00 hours" on "[n]umerous telephone calls with Elizabeth Burnett, Katherine, C. Anthony Edwards and Rick Mullin; preparation of Statement of Hours Expended." The time entry thus combines various unspecified telephone calls with Mr. Colley's preparation of his own bill to the Estate. It is not appropriate for the Estate to be charged for the preparation of Mr. Colley's fee request, as this time is expended for the benefit of Mr. Colley, not the Estate. *See Union Planters Nat'l Bank v. Dedman*, 86 S.W.3d 515, 521 (Tenn. Ct. App. 2001) ("Attorney's fees may be charged to the estate as an administrative expense if they can be shown to have been required and inure *to the benefit of the entire estate*."). The time spent on Mr. Colley's "Hours Expended" document, however, is "lumped in" with various telephone calls and is not separable from the time spent on the calls. Even for separated time entries, the time record contains almost no indication of the general subject matter of telephone calls, meetings, or other work.[10]

We note that, in its recent decision in *Wright v. Wright*, the Supreme Court declined to require trial courts to rely solely or even primarily on a "lodestar" approach for setting attorney fee awards, that is, calculating the fee award simply by multiplying the number of hours expended by the lawyer's reasonable or customary hourly rate. *Wright*, 337 S.W.3d at 179-80. Therefore, we need not determine on appeal the exact number of hours spent by Mr. Colley on work that benefitted the Estate.

_____

[9]Some of the time listed in the "Hours Expended" document as spent conferring with the tax attorney in person or by telephone do not appear to "marry up" with other documents in the record, such as the time records for the tax attorney. For example, for some of Mr. Colley's time entries, there is no corresponding time entry for Mr. Edwards.

[10]The absence of any detail in Mr. Colley's records might present less of a problem if Mr. Colley were seeking only a modest fee. In this case, however, Mr. Colley seeks a substantially enhanced fee.

However, Ms. Dockery raised valid concerns, both in the trial court and in this appeal. The burden, of course, is on Mr. Colley to show that the time listed in the "Hours Expended" document filed with the trial court related to assets of the probate estate and benefitted the Estate. *Union Planters*, 86 S.W.3d at 521. The *Wright* case notes that a lawyer's fee request should be supported by "precise information" on the time spent on the matter. *Wright*, 337 S.W.3d at 181.

Ms. Dockery asserts that the time listed on Mr. Colley's "Hours Expended" document that benefitted the Estate totals 27 hours, rather than the 48 hours claimed by Mr. Colley. In the face of this assertion in the trial court, Mr. Colley offered no rebuttal and no explanation, but instead merely pointed to the "extraordinary services" discussed above. He does the same in his appellate brief to this Court. We are left with little choice but to consider Ms. Dockery's contention on the hours Mr. Colley worked that actually benefitted the Estate to be undisputed for purposes of this appeal.

### *RPC 1.5 Factors*

As set forth above, we have determined that the trial court "stray[ed] beyond the applicable legal standard[]" in basing its fee award on the percentage formula in the Local Rule, and thus abused its discretion in that regard. This does not tell us, however, whether the amount of the fee award was unreasonable and an abuse of discretion. To make this determination, we consider the factors set in RPC 1.5. At the time of the proceedings below, this Rule of Professional Conduct stated:

> (a) A lawyer's fee and charges for expenses shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
> > (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> > (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> > (3) the fee customarily charged in the locality for similar legal services;
> > (4) the amount involved and the results obtained;
> > (5) the time limitations imposed by the client or by the circumstances;
> > (6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or
lawyers performing the services;
(8) whether the fee is fixed or contingent;
(9) prior advertisements or statements by the lawyer with respect
to the fees the lawyer charges; and
(10) whether the fee agreement is in writing.

Tenn. Sup. Ct. R. 8, RPC 1.5.[11]

Applying the first factor in RPC 1.5, Mr. Colley's time and labor is reflected in his time records, tempered by the unrefuted objections raised by Ms. Dockery. They indicate a modest expenditure of attorney time and labor. As noted above, apart from the valuation of the Decedent's Bank stock and the preparation of the Estate tax return, both of which were handled by specialists, the Estate involved neither "novelty" nor "difficulty." As to the skill required, the record indicates that Mr. Colley has expertise in probate matters, and that he possessed the requisite skill to employ the necessary specialists and handle the matters that were not delegated to those specialists.

As to the second factor, there is nothing in the record indicating that Mr. Colley's acceptance of the representation of the Decedent's Estate precluded him from other employment as a lawyer.

The third factor listed under RPC 1.5 is the fee customarily charged in the locality for similar services. Consideration of this factor in this case is complicated by the percentage formula in Local Rule 33.04, which we have held is contrary to the Supreme Court Rules and the applicable caselaw. Nevertheless, we recognize that the percentage formula in the Local Rule may have been applied as a "rule of thumb" for a number of years, and may have informed Mr. Colley's expectations as to the fee that would be deemed reasonable by the trial court. *See In re Estate of Weisberger*, 224 S.W.3d at 160, 164. The percentage formula in Local Rule 33.04 provides for a total fee of "not less than 1% nor more than 5% of the gross probate estate." Because the duties of an attorney handling such an estate normally include the estate tax return, we interpret the percentage formula as applying to Mr. Colley's entire fee, inclusive of the $10,784.50 fee to be paid by Mr. Colley to tax lawyer Anthony Edwards. Applying the percentage formula to the $622,633 gross probate estate in this case, the total fee at the low end of the range would be $6,226.33, and the total fee at the high end of the

---

[11]On January 1, 2011, the first sentence of RPC 1.5 was amended to read as follows:

A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses.

range for the most difficult estate would be $31,131.65. Thus, Mr. Colley's fee request of $50,000 substantially exceeds the upper limit of the range of fees yielded from application of the formula in the Local Rule, and does not comport with the fees customarily charged in his locality for similar matters.[12]

Under subsection (a)(4) of RPC 1.5, the Court is directed to consider "the amount involved and the results obtained." Here, Mr. Colley's primary responsibilities were with respect to the gross probate estate, a substantial dollar value of $622,633. The gross taxable estate of $2,877,238 must also be considered even though it includes non-probate assets such as the Bank stock, because Mr. Colley had overall responsibility for making certain the Estate tax return was filed. However, Mr. Colley retained specialists to value the Bank stock and prepare the Estate tax return, so the burdens associated with the non-probate assets were borne largely by the specialists. As to the results achieved, the record indicates that the specialists achieved very good results, and that the results for the overall Estate appear satisfactory.

As to factor (a)(5) under RPC 1.5, nothing in the record indicates that Mr. Colley was subjected to time limitations in his handling of the Estate. As to factor (a)(6), the record does not include any information as to the nature and length of Mr. Colley's professional relationship with the executor of the Estate, the Bank. With regard to factor (a)(7), from the high regard of the trial court for Mr. Colley, we presume his "experience, reputation, and ability" to be excellent.

RPC 1.5(a)(8) directs the Court to consider "whether the fee is fixed or contingent." As discussed below, in the Supreme Court's decisions in *White v. McBride* and *Wright v. Wright*, this was an important component in determining whether the enhanced fee was justified under the facts in each case. *See Wright*, 337 S.W.3d at 183-88; *White*, 937 S.W.3d at 800-01. In the case at bar, there is no indication in the record that Mr. Colley entered into a fee agreement that involved any risk that he would not recover a reasonable fee. There are no further factors under RPC 1.5 that would be applicable.

The comments to RPC 1.5 also make it clear that the listed factors are not exclusive. *See Wright*, 337 S.W.3d at 177 n.17. In that vein, we also consider the fact that a buyer for the Decedent's house was readily available, so Mr. Colley simply handled the sale of the house and did not hire a realtor for it. This was a benefit to the Estate.

---

[12]Using the percentage formula in the Local Rule, for the most difficult estate, the fee that Mr. Colley would receive after paying the tax lawyer would be a little over $20,000. By this measure, the requested fee of $39,215.50 is almost twice as much as Mr. Colley would receive at the top end of the percentage range for the most difficult cases.

Considering all of these factors, we must conclude that the $39,215.50 fee awarded to Mr. Colley is well beyond the range of reasonableness for an attorney fee in this case. Therefore, in light of the erroneous legal standard utilized by the trial court in its reliance on the Local Rule's percentage formula, and the trial court's award of a fee amount that is well beyond what could be considered reasonable, we must conclude that the trial court abused its discretion in the fee award to Mr. Colley.

### *White v. McBride*

Having concluded that the fee award to Mr. Colley is excessive and an abuse of discretion, we now turn to the issue of whether Mr. Colley's fee request was so "clearly excessive" as to constitute an ethical transgression, thereby precluding him from receiving any fee at all under *White v. McBride*, 937 S.W.2d 796 (Tenn. 1996).

Comparing Mr. Colley's fee request to the fee Mr. Colley would receive under a strict "lodestar" approach of hours worked multiplied by hourly rate, Ms. Dockery asserts that Mr. Colley's fee request was so clearly excessive that he should be precluded from recovering any fee at all. In response, Mr. Colley argues that *White v. McBride* is factually distinguishable. He insists that his fee request certainly was not so clearly excessive that he should be awarded no fee at all.

In *White*, an attorney was hired to represent a husband in the probate of his wife's estate. Under the attorney's fee contract with the husband, the attorney was to receive a third of the husband's recovery from his wife's estate. *Id.* at 797-98. Before the assets in the wife's estate were distributed, the husband died. *Id.* at 798. The attorney filed a claim against the husband's estate for an attorney fee in the amount of $108,291, or one-third of the wife's assets that the husband's estate would receive, based on the attorney's one-third contingency fee contract with the husband. *Id.* at 798-99. The executor of the husband's estate disputed the attorney fee, arguing that the claimed fee was "clearly excessive" and thus unenforceable. *Id.* at 799.

The trial court in *White* rejected the attorney's fee request under the contingency fee contract as excessive. *Id.* at 799. It awarded him a fee of $12,500 under the doctrine of *quantum meruit*. *Id.* The attorney appealed, and the intermediate appellate court affirmed. *Id.* at 800. The petitioner attorney then appealed to the Tennessee Supreme Court.

On appeal, the *White* Court examined the issue of "whether the contingency fee contract itself and the [attorney's] subsequent attempt to enforce that contract contravened DR 2-

106," the predecessor to RPC 1.5.[13] *Id.* The provision of DR 2-106 at issue stated: "A lawyer shall not enter into an agreement for, charge, or attempt to collect an illegal or clearly excessive fee." *See White*, 937 S.W.2d at 800. As with the current RPC 1.5, DR 2-106 describes how the court is to determine whether the fee sought by the lawyer is "clearly excessive," listing factors to be considered.[14] *Id.* After examining the fee contract at issue and the facts in light of the factors listed in the disciplinary rule, the *White* Court stated: "[W]e agree [with the trial court] that the fee sought to be charged was clearly excessive under DR 2-106 . . . ." *Id.* at 801. It therefore held that the fee contract was unenforceable. *Id.*

The *White* Court then considered whether the attorney should nevertheless be permitted to recover fees on a *quantum meruit* basis. *Id.* It concluded that permitting an attorney who knowingly seeks a clearly excessive fee to utilize *quantum meruit* as a "fall back" would encourage unethical overreaching by lawyers. *Id.* at 803. The Court held that "an attorney who enters into a fee contract, or attempts to collect a fee, that is clearly excessive under DR 2-106 should not be permitted to "recover fees under the equitable doctrine of *quantum*

---

[13]In March 2003, the Code of Professional Responsibility was replaced by the Rules of Professional Conduct. *See Bd. of Prof. Resp. v. Curry*, 266 S.W.3d 379, 382 n.2 (Tenn. 2008). At that time, RPC 1.5 replaced DR 2-106.

[14]DR 2-106 provided:

> (B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:
>
> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
>
> (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
>
> (3) The fee customarily charged in the locality for similar legal services.
>
> (4) The amount involved and the results obtained.
>
> (5) The time limitations imposed by the client or by the circumstances.
>
> (6) The nature and length of the professional relationship with the client.
>
> (7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
>
> (8) Whether the fee is fixed or contingent.

*White*, 937 S.W.2d at 800.

*meruit*." ***Id.*** It therefore reversed the trial court's award of fees on a *quantum meruit* basis. ***White***, 937 S.W.2d at 803.

Mr. Colley contends that the "facts in ***White v. McBride*** are vastly different from the facts in this case," and so "the rule in ***White v. McBride*** should not be applied" by this Court. (Brief at 3.) He does not explain the fact differences that he contends are salient.

To be sure, there are differences in the facts in ***White*** compared to the facts in this appeal. In ***White***, the Court examined both the attorney's fee contract "and the subsequent attempt to enforce that contract" under the disciplinary rule. ***Id.*** at 800. In the case at bar, Mr. Colley's fee contract is not at issue, and is not even in the record. Rather, at issue are Mr. Colley's fee request to the trial court and his subsequent attempts to collect the fee. Regardless, the disciplinary rule being enforced in ***White*** prohibited the lawyer from "enter[ing] into an agreement for, charg[ing], or attempt[ing] to collect . . . [a] clearly excessive fee." ***Id.*** at 800. The holding in ***White*** went to both the fee contract and the attorney's attempts to collect it. ***Id.*** at 803. To hold ***White*** inapplicable to the case at bar because the dispute is over a fee request to the Court instead of a fee contract would be contrary to both the holding and the principles articulated in ***White***.

Finding that ***White v. McBride*** may be applied in this appeal, we examine whether Mr. Colley's fee request to the trial court was "clearly excessive" and whether his attempts to collect the fee constitute the type of ethical transgression prohibited under ***White*** and RPC 1.5.

In ***White***, after the Court considered all of the applicable factors in the disciplinary rule, it focused on the lawyer's effective hourly rate if he received the requested fee. The petitioner attorney in ***White*** sought a fee that would have equated to a rate of approximately $950 per hour, over six times the attorney's normal rate of $150 per hour. ***White***, 937 S.W.2d at 801. The Court also noted that the estate was "in the scheme of things, not terribly complicated or novel," and the result obtained by the attorney was "not particularly good." ***Id.***

The ***White*** Court also concluded that while the attorney's fee agreement was facially a contingency fee contract, there was no "true contingency" because the attorney was aware at the time he undertook the representation that the wife had substantial assets and the interest of the husband in those assets was "beyond dispute." ***Id.*** at 800, 801. This was important to the Court for two reasons. First, the petitioner attorney had no real risk of non-recovery, which would have been some justification for enhanced compensation. ***Id.*** In addition, the Court appeared to take umbrage at the attorney's contention that, when he undertook representation of the husband, he had "no idea" of the size of the wife's estate, and thus perceived a true contingency. ***Id.*** at 800. After reviewing the facts at length, the Court

rejected this contention as untrue, and commented that the attorney's proffered justification for an outsize fee "rings quite hollow indeed." *Id.* at 801.

The facts in *White* must be contrasted with those in *Wright*. In *Wright*, the petitioner attorney was hired to represent a minor on a personal injury claim. *Wright*, 337 S.W.3d at 169. He entered into a contingency fee agreement and then proceeded to spend some 144 hours developing the case and looking for "deep pockets" to maximize the recovery on behalf of the minor. *Id.* at 187. Eventually, the case was settled for an amount that exceeded the available insurance policy limits. *Id.* at 169, 174. The minor's attorney then petitioned for a fee award.[15] *Id.* at 172. In support of his fee request, the attorney filed an affidavit detailing his time and the work he did. *Id.*

In a hearing before the trial court, the petitioner attorney in *Wright* testified in support of his fee request. The attorney said that he tried more jury cases than any other attorney in his locality. Because of this, he charged an hourly rate of $400 per hour, at least twice the rate of any other attorney in the area. *Id.* at 173. The petitioner attorney testified that he discloses to potential clients that he knows of no other attorney in the area whose hourly rate is so high. The attorney recounted in detail the circumstances presented to him when he was hired, and his efforts to explore and develop potential sources for a substantial recovery. He explained in detail his time records, including an inadvertent duplication of two time entries. *Id.* at 172-73. Finally, he explained his reasoning for settling the case instead of taking it to trial. *Id.* at 173-74.

The trial court in *Wright* awarded the petitioner attorney $131,000, almost one-third of the minor's total recovery. *Id.* at 175. The guardian ad litem appealed, ultimately to the Tennessee Supreme Court. On appeal, the Court spent the bulk of its opinion discussing whether an attorney fee for representation of a minor should be set differently from other cases, eventually concluding that it should be set in accordance with RPC 1.5 regardless of the age of the attorney's client. *Id.* at 185. The Court then examined the reasonableness of the fee awarded to the petitioner attorney. *Id.* at 186.

As in *White*, the *Wright* Court looked at the effective hourly rate to the lawyer in the fee awarded. It noted that the effective hourly rate equated to more than five times the attorney's normal hourly rate, and pointedly compared it to the award of six times the lawyer's hourly rate that was deemed "clearly excessive" in *White*. *Id.* at 186 (observing that the *Wright* attorney's rate of compensation "borders on" the rate in *White*).

---

[15]The initial fee award was appealed by the guardian ad litem, and the intermediate appellate court remanded for a hearing. The trial court held the required hearing and modified the fee award. The guardian ad litem then filed the second appeal. *Wright*, 337 S.W.3d at 172-76.

Despite the close correlation in the effective hourly rate, the Court in *Wright* approved the fee award.  It relied primarily on the fact that, unlike *White*, when the petitioner attorney in *Wright* undertook representation of the minor, the risk of a minimal recovery appeared substantial.  *Id.* at 188.  In addition, the result obtained by the attorney was "very good," owing to the attorney's diligent work.  *Id.* at 187-88.

While not stated explicitly, we glean an undercurrent in both cases related to the integrity and straightforwardness of the attorney's fee request.  In *Wright*, the Court's overall description depicts a forthright, credible justification by the attorney for the admittedly high fee request.  In contrast, in *White*, the attorney's proffered justification for the high fee was methodically broken down by the Court and revealed as disingenuous; the language used by the Court indicates indignation at such dissembling by a lawyer.  *White* emphasized the professional responsibility of a lawyer seeking a fee from his client, and described a violation of the disciplinary rule governing attorney fees as "an ethical transgression of a most flagrant sort as it goes directly to the heart of the fiduciary relationship that exists between attorney and client."  *White*, 937 S.W.2d at 803.

Thus, while both *White* and *Wright* involved fee requests that were substantially enhanced over the attorney's customary hourly rate, the key differences appear to be the result reached, the risk of non-recovery to the attorney, and the overall integrity of the fee request.

We apply these principles to the case at hand.  This case is similar to *Wright*, in that the overall result for the Estate was good, including the portion that was handled directly by Mr. Colley.  However, in contrast with *Wright*, in this case there is no risk of non-recovery by the attorney to justify such an outsize fee request.  From our reading of *White* and *Wright*, the risk of non-recovery is a major consideration.

As to the remaining factor, Mr. Colley's fee request leaves the Court uneasy.  We presume that Mr. Colley, an experienced probate lawyer, was aware that the percentage formula in Local Rule 33.04 was based on the dollar value of the gross probate estate rather than the gross taxable estate.  Despite this, his original fee request recites that the "Estate has an approximate value of $3,000,000.00 (Three Million Dollars)," a clear reference to the dollar value of the gross *taxable* estate.  The trial court's fee award explicitly applies the Local Rule percentage formula to this dollar value supplied by Mr. Colley.  After the difference between the dollar value of the gross taxable estate and the gross probate estate was pointed out in Ms. Dockery's motion to alter or amend and confirmed in the Bank's response, Mr. Colley's response to the motion does nothing to address or clarify the correct dollar value for the percentage formula.  Moreover, after valid questions about the somewhat sketchy time records were raised, Mr. Colley chose not to explain them, but to simply ignore the questions.

In addition, as justification for the hefty fee, Mr. Colley pointed primarily to the accomplishments of the specialists hired. All of this is troubling.

Certainly a lawyer can be expected to advocate forcefully for a fee he believes to be reasonable compensation for his valuable services. However, while some "spin" by a lawyer on behalf of a client may be tolerable, the cases indicate little tolerance for it where the attorney is advocating for his own fee from his client. *White* and *Wright* indicate that an attorney in such circumstances should shrink from overstatement and present a detailed, forthright justification for the requested fee.

Mr. Colley's fee request does not meet the level of straightforwardness exhibited in *Wright*. This factor, along with the lack of any risk of non-recovery and the disproportionate amount of the fee Mr. Colley requested, "gives us pause." *Wright*, 337 S.W.3d at 186. However, Mr. Colley also steered clear of the outright untruths laid bare in *White*, and, like *Wright*, a good result was reached in this matter.

While this case presents a close question, on balance, we conclude that Mr. Colley's fee request and his efforts to collect the fee do not rise to the level of "an ethical transgression of a most flagrant sort." *White*, 937 S.W.2d at 803. Therefore, we find that he is not precluded from receiving any fee at all.

### Reasonable Fee

We go on, then, to set a reasonable fee for Mr. Colley's services in this case. The moderate amount of time required of Mr. Colley, the lack of any risk of non-recovery, and the lack of novelty or difficulty of the tasks not delegated to specialists all indicate that a modest attorney fee should be awarded. However, the amount involved was substantial and the results good. Moreover, although Mr. Colley should not be compensated at a lawyer rate for handling the sale of the Decedent's house, avoiding the necessity of a realtor's fee was a benefit to the Estate.

Overall, we find that a fee in the amount of $8,000 is a reasonable fee for Mr. Colley's legal services in this case. The fee of $10,784.50 for the tax lawyer, Mr. Edwards, must be added to this, making the overall fee award a total of $18,784.50.

### CONCLUSION

The order of the trial court awarding Mr. Colley a fee of $50,000 is modified to award a total fee of $18,784.50 for the purposes set forth above, and the cause is remanded for further

proceedings consistent with this Opinion. Costs of this appeal are assessed against Appellee Jerry C. Colley, for which execution may issue if necessary.

_____

HOLLY M. KIRBY, J.